FILED
United States Court of Appeals
Tenth Circuit

April 15, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CUDD PRESSURE CONTROL, INC.,

      Plaintiff - Appellant,

v.

NEW HAMPSHIRE INSURANCE
COMPANY; NATIONAL UNION
FIRE INSURANCE COMPANY OF
PITTSBURGH, PA,

      Defendants - Appellees.

No. 14-6148
(D.C. No. 5:12-CV-01178-D)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **HOLMES**, and **MATHESON**, Circuit Judges.

---

Cudd Pressure Control, Inc. ("Cudd") brought suit against its employers'
liability insurers claiming that they breached their insurance contracts and
breached the duty of good faith and fair dealing by failing to indemnify Cudd for
a settlement and by failing to adequately investigate claims against Cudd. The
district court held that the insurance contracts covered only an employer's

---

[*] This Order and Judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

liability for accidental bodily injury that was not intentionally caused by the employer, and that the employee's claim had only alleged intentional harm. It therefore granted summary judgment on all claims to the insurers. Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's judgment.

## I

Cudd Pressure Control is a hydraulic fracturing enterprise that employed Mr. Allen Phillips in its Payne County, Oklahoma operation. In 2008, Mr. Phillips was killed after falling into a proppant injection machine on a worksite in Wheeler, Texas. Mr. Phillips's wife, Tonya Phillips, pursued a workers' compensation claim in Oklahoma under the Oklahoma Workers' Compensation Act, and she was awarded full benefits for herself and two minor children, as well as funeral expenses. Ms. Phillips then sued Cudd in the United States District Court for the Western District of Oklahoma under the "substantial certainty doctrine" that permits an injured employee's suit to proceed as an intentional tort when an employer acted with substantial certainty that injury would occur.

Prior to these events, National Union Fire Insurance Company ("National Union") had issued a multi-state insurance policy providing coverage to Cudd for workers' compensation and employers' liability claims in sixteen states, including Oklahoma. New Hampshire Insurance Company ("New Hampshire") had issued an identical policy covering Cudd in Texas. Both policies covered (as relevant here) only "bodily injury by accident," including bodily injury resulting in death.

Aplt. App. at 699, 709. Neither policy covered "bodily injury intentionally caused or aggravated by [the insured]." *Id.* at 700, 710.

Cudd, through its broker, provided notice to the insurers of Ms. Phillips's claims.[1] On September 15, 2011—allegedly almost two years after the insurers received notice—Mr. Ron Mann, who worked for Chartis, the claims administrator for both policies, sent a letter on behalf of National Union denying coverage on the grounds that: (1) the lawsuit did not allege a bodily injury by accident, (2) coverage was excluded because the suit alleged injury intentionally caused by Cudd, and (3) Mr. Phillips's employment was not necessary or incidental to Cudd's work in Oklahoma, and was therefore outside of the states covered by the National Union policy.

The parties agree that National Union has been consistent and unwavering in its position regarding the lack of coverage. In response, Cudd asked for an evaluation of coverage under the New Hampshire policy. Mr. Mann, handling claims for the New Hampshire policy on Chartis's behalf, replied that the New Hampshire policy would also not cover any damages awarded in the suit, because it, too, was limited to accidental bodily injury and did not cover injuries intentionally caused by Cudd. New Hampshire reiterated its position in a formal

---

[1]    The parties have not identified the timing of the notice. The broker was not required to provide notice until a reserve of $250,000 was exhausted, but the record does not specify when that occurred. Neither party has alleged that Cudd's notice was untimely.

letter in November 2011.

New Hampshire issued a new letter in January 2012 in which it informed Cudd of a "potential for coverage" and agreed to provide a defense in the Phillips litigation "subject to a reservation of rights." *Id.* at 754. The letter reserved the right to deny a defense, to not indemnify, or to do both. The letter also reiterated New Hampshire's reasons for finding no coverage under the policy. Nevertheless, New Hampshire continued to provide a defense to Cudd, using counsel of Cudd's own choosing, subject to a reservation of rights. Cudd ultimately moved for summary judgment in the district court on the basis that Ms. Phillips was barred from raising an intentional tort claim because she had already elected the workers' compensation remedy. The district court agreed, and granted summary judgment to Cudd under Oklahoma law.

Ms. Phillips then appealed from the final judgment to our court, which ordered the parties into a mediation conference. Cudd informed both National Union and New Hampshire of the mediation conference and demanded coverage under their policies. Cudd stated that the district court's order set forth facts demonstrating that Mr. Phillips's employment was necessary and incidental to Cudd's work in Oklahoma, and argued that therefore both New Hampshire and National Union should provide coverage under their respective policies. Ms. Tara Barlin, another employee of Chartis, replied that "we will continue to defend the claim as we have been," and that she would be available by phone "to assist in the

mediation as needed," but that the coverage decision remained the same. *Id.* at 806.

Six days later, Cudd informed Ms. Barlin of a settlement demand of $825,000 and requested that Chartis either (1) agree to the amount of the settlement and pay in full, or (2) waive the reasonableness of the amount of the settlement while preserving Chartis's coverage defenses. Ms. Barlin responded the same day "neither consent[ing] to the settlement nor withhold[ing] [Chartis's] consent" because Chartis continued to find that the claims were not covered by the policies and were solely a matter of Cudd's concern. *Id.* at 809. Cudd then settled the suit with Ms. Phillips for $750,000, and we entered an order dismissing Cudd's appeal in light of the settlement. *See* Order, No. 12-6154 (10th Cir., filed Aug. 23, 2012). Cudd continued to demand that National Union and New Hampshire cover the settlement, and the insurers continued to maintain that there was no coverage for this claim under their respective policies.

Cudd then filed the present suit against National Union and New Hampshire, asserting claims for breach of contract and breach of the duty of good faith and fair dealing. National Union and New Hampshire moved for summary judgment on the bases that: (1) coverage was properly denied because the Phillips suit did not involve bodily injury by accident, and (2) the policies did not cover Cudd's intentional wrongdoing. The insurers also argued that they acted reasonably and in good faith as a matter of law in denying coverage and refusing

5

to pay non-covered claims. Cudd filed its own motion for summary judgment on the basis that there was coverage under both the National Union and New Hampshire policies. Additionally, Cudd argued that the insurers engaged in bad faith by failing to investigate coverage, denying coverage, and refusing to participate in and fund the settlement.

The district court granted summary judgment to the insurers and denied Cudd's summary-judgment motion. It found, contrary to Cudd's allegations in the present case, that the Phillips suit was governed by Oklahoma law—as the district court in the Phillips case had previously held—and that in any event, the parties' arguments did not present sufficient information for the court to endeavor to determine anew the governing law of that case. Turning to the question of what law governed Cudd's breach-of-contract claims, the court was willing to assume that Texas law governed the claim regarding the New Hampshire policy, and it noted that the parties had relied on Oklahoma law in their arguments concerning the National Union policy. It proceeded to find that Ms. Phillips had not asserted a claim for a bodily injury by accident under either Texas or Oklahoma law, and accordingly found no coverage under either policy. Finally, it reasoned that, because a plaintiff cannot prevail on a bad-faith claim when the plaintiff is not entitled to coverage under the policy at issue, Cudd could not establish the elements of its bad-faith claim. Cudd now appeals.

## II

"We review the district court's grant of summary judgment *de novo*,

applying the same standard used by the court below." *Idg, Inc. v. Continental*

*Cas. Co.*, 275 F.3d 916, 920 (10th Cir. 2001). "Summary judgment is appropriate

when, viewing the record in the light most favorable to the nonmoving party,

'there is no genuine dispute over a material fact and the moving party is entitled

to judgment as a matter of law.'" *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607,

611 (10th Cir. 1994) (quoting *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th

Cir. 1991)). "A 'material fact is one which might affect the outcome of the

dispute under the applicable law.'" *Meyer v. Conlon*, 162 F.3d 1264, 1268 (10th

Cir. 1998) (quoting *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995)).

"An issue of material fact is genuine if a reasonable jury could return a verdict for

the non-movant." *Id.* (quoting *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.

1996)). "If there is no genuine issue of material fact in dispute, then we next

determine if the substantive law was correctly applied by the district court." *Id.*

(quoting *Kaul*, 83 F.3d at 1212).

## A

Cudd first asks us to reverse the district court on the issue of whether there

was coverage for Ms. Phillips's claim under the insurance contracts. Because we

determine that Ms. Phillips's action did not allege an "accident" within the

meaning of either Texas or Oklahoma law, we conclude that Cudd was not

entitled to coverage under either policy.  Accordingly, we affirm the district court's grant of summary judgment to the insurers on this issue.

## 1

Before addressing the contracts at issue in this suit, we begin with some observations concerning the Phillips suit that guide our analysis in this case.

We accept for purposes of our decision the undisputed conclusion on appeal that Ms. Phillips's action was a product of Oklahoma law.  In the Phillips suit, the district court determined that Oklahoma law applied to her claims.  *Phillips v. Cudd Pressure Control, Inc.*, No. CIV-09-1197-M, 2012 WL 1150831, at *2 (W.D. Okla. Apr. 6, 2012) ("[T]he Court finds that Oklahoma has the most significant relationship to the occurrence and the parties in this case and that Oklahoma law, therefore, applies in this case."), *appeal dismissed by* Order, No. 12-6154 (10th Cir., filed Aug. 23, 2012).  Resting primarily on principles of issue preclusion (i.e., collateral estoppel), the district court in the instant case declined to revisit this choice-of-law ruling.[2]  Accordingly, the court accepted the prior

---

[2]     In this diversity action, the preclusive effect of this district court ruling in the Phillips case with respect to the choice-of-law issue—under issue-preclusion (i.e., collateral-estoppel) principles—would be a matter of federal common law.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) (noting that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity"); *see also Smith v. Bayer Corp.*, 564 U.S. 299, 131 S. Ct. 2368, 2376 n.6 (2011) ("We have held that federal common law governs the preclusive effect of a decision of a federal court sitting in diversity."); *accord Clark v. Zwanziger* (*In re Zwanziger*), 741 F.3d 74, 77 (10th Cir. 2014).  Federal common law, however, would point us back to

(continued...)

determination that Ms. Phillips's action was a creature of Oklahoma law. By its terms, Cudd's opening appellate brief does not appear to challenge this district court action, and Cudd does not contest the insurers' assertion that the matter is not before us for review. Thus, we operate from the premise that the Phillips action is a product of Oklahoma law. And Cudd has waived any arguments to the contrary. *See, e.g.*, *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) ("The failure to raise an issue in an opening brief waives that issue."). Now, quite apart from the law that governs the construction of the two insurance contracts at issue, we must examine the reach and scope of Ms. Phillips's action under Oklahoma law because whether the Phillips suit is covered under the insurance contracts at issue depends on precise substantive nature of her suit.

Ms. Phillips brought an action as permitted by *Parret v. UNICCO Serv. Co.*, 127 P.3d 572 (Okla. 2005), *superseded by statute* Okla. Stat. tit. 85, § 302 (2011) *as recognized by Martinez v. Angel Expl., LLC*, 798 F.3d 968, 982 (10th

---

[2](...continued)
Oklahoma law for guidance and direction. *See Semtek*, 531 U.S. at 508 ("This is, it seems to us, a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits."); *Clark*, 741 F.3d at 77 ("This dispute arose in the Western District of Oklahoma sitting in diversity, so we apply Oklahoma law."); *see also Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 44 & n.4 (1st Cir. 2012) ("We agree with a number of circuit courts who have read *Semtek* as applying in successive diversity actions, as is the case here."). As noted *infra*, in light of Cudd's decision not to challenge the district court's issue-preclusion determination, we need not consider this choice-of-law matter further.

Cir. 2015).[3]  Generally, the Oklahoma Workers' Compensation Act provides the

exclusive remedy for employees injured while working in the scope of their

employment and bars lawsuits for damages caused by negligence.  *Parret*, 127

P.3d at 578; *see* Okla. Stat. tit. 85A, § 5(A).  However, where an employer's

wrongdoing goes beyond negligence to intentional misconduct that results in

harm, the Act's exclusive-remedy provision will not bar a suit for damages.

---

[3]      The exclusive-remedy provision of Oklahoma workers' compensation
law has gone through a series of changes in the last decade.  *See Martinez*, 798
F.3d at 982; *Pennsylvania Mfrs. Ass'n Ins. Co. v. Lechner*, 910 F. Supp. 2d 1291,
1296 (N.D. Okla. 2012).  The holding of *Parret*, as it applies to the exclusive-
remedy provision of workers' compensation law, was superseded by a 2011
statute that was codified at Okla. Stat. tit. 85, § 302.  That statute has since been
repealed and replaced by the Administrative Workers' Compensation Act, 2013
Okla. Sess. Laws Ch. 208 § 5 (codified at Okla. Stat. tit. 85A, § 5).  Even after
this last change, Oklahoma law still permits an intentional tort to escape the
exclusive-remedy provision of the Workers' Compensation Act, but it now states
that "[a]llegations or proof that the employer had knowledge that the injury was
substantially certain to result from the employer's conduct shall *not* constitute an
intentional tort" for purposes of applying the exclusive remedy.  Okla. Stat. tit.
85A, § 5(B)(2) (2014) (emphasis added).

Nevertheless, this case is not concerned with the contours of the exclusive-
remedy provision as it stands now.  Oklahoma law provides that its alteration of
the meaning of intentional tort, for exclusive-remedy purposes, lacks retroactive
effect.  *Id.* § 3(B) ("This act shall apply only to claims for injuries and death
based on accidents which occur on or after the effective date of this act.").  At the
time of Mr. Phillips's death, the exclusive-remedy provision was codified at Okla.
Stat. tit. 85, § 12, and it did not delineate the level of intent necessary for an
employer to commit an intentional tort.  *See, e.g.*, *Lechner*, 910 F. Supp. 2d at
1296.  *Parret* supplied the necessary level of intent under that statutory scheme.
Thus, a *Parret* claim was viable at the time Ms. Phillips brought her suit.
Moreover, we note the limited scope of the statutory change: it is only concerned
with the scope of the exclusivity of the remedy of workers' compensation, not
with re-defining intentional torts more generally.

*Parret*, 127 P.3d at 579; *see* Okla. Stat. tit. 85A, § 5(B)(2).

In *Parret*, the Oklahoma Supreme Court established the "substantial certainty" test to delineate whether an act was sufficiently intentional to fall outside the exclusive-remedy ambit of the Workers' Compensation Act. 127 P.3d at 573–74. Under that test, "an employer's conduct . . . amount[s] to an intentional tort" when the employer "(1) desired to bring about the worker's injury or (2) acted with the knowledge that such injury was *substantially certain* to result from the employer's conduct." *Id.* at 579 (emphasis added); *see also Martinez*, 798 F.3d at 982. An intentional tort under *Parret* operates just like any other intentional tort under Oklahoma law. *See CompSource Okla. v. L & L Constr., Inc.*, 207 P.3d 415, 420 (Okla. Civ. App. 2008) ("*Parret* did not recognize two types of intentional tort. Rather, it clarified what kind of conduct constituted an intentional tort."). The substantial certainty required under *Parret* describes a high degree of confidence by an employer that injury will occur. "'[M]ore than knowledge and appreciation of the risk is necessary.' Even recklessness or wantonness is not enough. There must be more than knowledge of 'foreseeable risk,' 'high probability,' or 'substantial likelihood'; there must be 'knowledge of the "substantial certainty" of injury.'" *Monge v. RG Petro-Machinery (Grp.) Co.*, 701 F.3d 598, 605 (10th Cir. 2012) (quoting *Parret*, 127 P.3d at 579); *see also Price v. Howard*, 236 P.3d 82, 88 (Okla. 2010) ("[N]othing short of a demonstration of the employer's knowledge of the substantial certainty

11

of injury will suffice." (emphasis omitted)).

The averments in Ms. Phillips's complaint fell squarely within *Parret*, as the district court found.  She alleged that Cudd acted with "willful and wanton negligence . . . with knowledge that such negligence was substantially certain to result in serious injury or death to its workers."  Aplt. App. at 725 (Complaint, *Phillips v. Cudd Pressure Control*, No. CIV-09-1197-M (W.D. Okla. Oct. 30, 2009)); *see also id.* at 720 ("[Mr.] Phillips' entrapment, suffering, pain, injuries, distress, and ultimate death were foreseeable and known to be substantially certain to occur from the standpoint of Defendant Cudd, and were avoidable and unnecessary but for the willful, wanton, and gross negligence of Cudd which, under the circumstances, was tantamount to intentional conduct . . . .").  Accordingly, the district court concluded that Ms. Phillips had brought an intentional tort claim.  *See Phillips*, 2012 WL 1150831, at *2 ("[T]he precise issue involved in this case [is] whether a plaintiff is barred from bringing an *intentional* tort claim because she has received a final award in her workers' compensation case.").  Thus, the question for our consideration is not whether Ms. Phillips brought a *Parret* claim, as she unquestionably did, but rather whether the insurance contracts at issue exclude coverage for a *Parret* claim.  It is to this question that we turn.  Ultimately, we answer in the affirmative.

**2**

Whether analyzed under Texas or Oklahoma law, the contracts do not

12

provide coverage to Cudd regarding Ms. Phillips's *Parret* claim. We conclude

that Texas law applies to Cudd's claim concerning the New Hampshire policy.

We analyze the National Union policy under Texas and Oklahoma law; by their

arguments, the parties have waived the application of any other state's law to the

contract. We conclude that under the law of both Oklahoma and Texas, a *Parret*

claim does not allege a "bodily injury by accident" within the meaning of the two

contracts. For that reason, we affirm the judgment of the district court granting

summary judgment to the insurers and denying summary judgment to Cudd.

a

We begin by addressing which law applies to the contracts at issue.

Because this case is in federal court based on diversity jurisdiction, we apply the

choice-of-law provision of the forum state—that is, Oklahoma—to determine

what law governs the interpretation of the contracts at issue. *See Mountain Fuel

Supply v. Reliance Ins. Co.*, 933 F.2d 882, 887 (10th Cir. 1991) (holding that in

interpreting a contract, "[w]e look to the conflict of laws rules of . . . the forum

state[] to determine which state's laws will be controlling"); *cf. Black v. Cabot

Petroleum Corp.*, 877 F.2d 822, 823 (10th Cir. 1989) ("A federal district court

sitting in a diversity case must apply the choice of law rules of the state where it

sits, which in this instance is Oklahoma."). Oklahoma's choice-of-law rules for

contract actions are determined by statute: "A contract is to be interpreted

according to the law and usage of the place where it is to be performed, or, if it

13

does not indicate a place of performance, according to the law and usage of the place where it is made." Okla. Stat. tit. 15, § 162. The Oklahoma Supreme Court has announced a strong preference in Oklahoma law for applying the law of the place of performance. *See Panama Processes, S.A. v. Cities Serv. Co.*, 796 P.2d 276, 287 (Okla. 1990) ("It is only when there is *no indication in the contract* where performance is to occur that the interpretation would apply the *lex loci contractus* rule.").

In the context of applying Oklahoma's choice-of-law rules, we have previously explained that the language of Okla. Stat. tit. 15, § 162 "compels a reading which restricts application of the law of the place of performance of a contract to cases in which the *place of performance is indicated in the contract*." *Rhody v. State Farm Mut. Ins. Co.*, 771 F.2d 1416, 1420 (10th Cir. 1985). However, we have also noted under Oklahoma law that courts may discern "the implied intent of contracting parties that the law of a certain jurisdiction control their contractual obligations from their conduct or from certain language in the contract." *Id.* In addition, we have recognized that the specification of a place for payment of premiums and benefits under an insurance policy evinces a designation of a location as the place of performance. *Id.* Nevertheless, when the language of the contract does not directly *or* implicitly indicate a place of performance, we will resort to applying the law of the state of contracting. *Id.*

The New Hampshire policy only applied to workers' compensation and

14

employers' liability losses occurring in Texas.  Given the textual limitation of the policy to Texas, we may recognize this language as evincing an implied intent that Texas law govern the contract.  Therefore, we conclude that Texas is the place of performance and apply Texas law.

As for the National Union policy, in its briefing before the district court, Cudd applied Oklahoma law to the National Union policy without explaining why.  Aplt. App. at 684–86 (Pla.'s Mot. for Sum. J. and Br. in Sup., dated June 19, 2013); *see also id.* at 1261 (Dist. Ct. Order, dated June 16, 2014).  The insurers argued that it does not matter whether Texas or Oklahoma law is applied because there is no breach of contractual obligations under the National Union policy under either state's law.  *Id.* at 1261–62.  We agree with them.  Consequently, we need not resolve definitively whether Oklahoma or Texas law is controlling as to the National Union policy.  And, by limiting their arguments to the laws of these two states, the parties have waived any contention that any other state's laws govern here.  *See, e.g.*, *City of Colorado Springs v. Solis*, 589 F.3d 1121, 1135 n.5 (10th Cir. 2009) ("[A]rguments not raised in the opening brief are waived.").

**b**

Under Texas law, there is no coverage under either the New Hampshire or National Union policy for a *Parret* claim because such a claim does not allege an accident within the meaning of either contract.  As material here, the language of

15

the two policies is identical.

The Texas Supreme Court has held that an injury "does not involve an accident or occurrence" under an insurance contract when either (1) "direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort)," or (2) "the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 9 (Tex. 2007). In Texas, "an insured intends to injure or harm another if he intends the consequences of his act, or believes that they are substantially certain to follow" therefrom. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 378 (Tex. 1993) (adopting the Restatement (Second) of Torts § 8A (1965)); *see also id.* ("[I]ntent . . . . extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does." (alteration in original) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 8, at 35–36 (5th ed. 1984))); *Maayeh v. Trinity Lloyds Ins. Co.*, 850 S.W.2d 193, 195 (Tex. App. 1992) ("[I]f a person realizes that injury is substantially certain to follow from his actions, then the injury is intentional.").

Because Ms. Phillips pleaded a *Parret* claim in Oklahoma court, Texas law holds that the claim alleged was not an accident. Under Oklahoma substantive law, which defines the bounds of Ms. Phillips's suit, a *Parret* claim is an

16

intentional tort. *Parret*, 127 P.3d at 579. And Texas law states that all such intentional torts are not accidents, even if the employer did not intend or expect the result. *See Lamar Homes*, 242 S.W.3d at 8 ("[A]n intentional tort is not an accident . . . regardless of whether the effect was unintended or unexpected."); *see also Pennsylvania Mfrs. Ass'n Ins. Co. v. Lechner*, 910 F. Supp. 2d 1291 (N.D. Okla. 2012) (applying Texas law to a *Parret* claim in Oklahoma and finding that the claim was an intentional tort, and therefore that under Texas law the claim was outside the provision of an insurance contract covering, *inter alia*, "bodily injury by accident"). Put another way, Ms. Phillips alleged in her complaint that Cudd was "substantially certain" that its actions would injure Mr. Phillips. Aplt. App. at 720, 725. Such allegations of substantial certainty move the claim outside the realm of accidental conduct as a matter of Texas law. *See Lamar Homes*, 242 S.W.3d at 9 ("[A] claim does not involve an accident or occurrence when . . . the resulting damage was the natural and expected result of the insured's actions."). Thus, because Ms. Phillips's complaint alleged an event that was not an "accident," it was not covered under the New Hampshire contract (or the National Union contract as interpreted under Texas law).

In this regard, we consider persuasive a federal district court decision from Texas—which dealt with an analogous situation—though we obviously are not bound by it. *See Liberty Ins. Corp. v. Dixie Elec., LLC*, 101 F. Supp. 3d 575 (N.D. Tex.), *aff'd*, --- Fed. App'x ----, 2015 WL 9145494 (5th Cir. Dec. 16, 2015)

(adopting the district court's analysis in full).  In that case, the district court

considered whether an insurance contract covered an employer against a third-

party claim averring that the employer had acted with the expectation that its act

would injure the employee.  *See id.* at 576–79.  The insurance contract at issue

contained language identical to that in the contracts in this case: it covered only

"bodily injury by accident" and excluded "bodily injury intentionally caused" by

the employer.  *Id.* at 577.  In *Liberty*, the employee had brought a *Delgado* claim

under New Mexico law against the employer, which in material respects is

equivalent to a *Parret* claim under Oklahoma law.  *See id.* at 581.  The insurer

paid for the litigation under a reservation of rights, and after the employer settled,

the insurer filed a declaratory judgment action, seeking a determination of

coverage under the policy for the claims against the employer in the underlying

lawsuit.  *See id.* at 576, 578–79.  The court found that there was no coverage for

the *Delgado* claim because such a claim does not allege an accident.  *Id.* at

583–84.

Like a *Parret* claim in Oklahoma law, a *Delgado* claim in New Mexico law

constitutes an exception to the general rule that prevents workers from recovering

damages for injuries suffered during the course of employment.  *See id.* at 581.

In this regard, while a *Parret* claim involves an employer "act[ing] with the

knowledge that [the] injury was substantially certain to result," *Parret*, 127 P.3d

at 579, under a *Delgado* claim, an employer performs an "intentional act or

18

omission . . . reasonably expected to result in the injury suffered by the worker,"
*Delgado v. Phelps Dodge Chino, Inc.*, 34 P.3d 1148, 1156 (N.M. 2001). And, just
as a *Parret* claim "amount[s] to an intentional tort," *Parret*, 127 P.3d at 579, a
*Delgado* claim "requires intentional infliction of or willfully causing an injury,"
*Chairez v. James Hamilton Const. Co.*, 215 P.3d 732, 802 (N.M. Ct. App. 2009).

As the district court found in *Liberty*, a claim that requires a showing of an
intentional tort cannot be an accident under Texas law. *Liberty*, 101 F. Supp. 3d
at 582–83. Texas law defines an accident as an unexpected event—a concept at
odds with an intentional tort claim, which necessarily requires conduct expected
to result in injury. *Id.* at 582. The court in *Liberty* found that because
"[n]egligence is not enough" to establish a *Delgado* claim (which is an intentional
tort), "[b]y definition, any liability-producing event that would satisfy the
*Delgado* standard for [the employer's] liability in the Underlying Lawsuit would
necessarily preclude coverage for [the employer] under the Policy" as a matter of
Texas law. *Id.* at 581–83.

The reasoning in *Liberty* applies with equal force here. As we have stated,
a *Parret* claim is an intentional tort that requires an act to be made with
knowledge that injury was substantially certain to occur. *Parret*, 127 P.3d at 579.
But, as a matter of Texas law, "a claim does not involve an accident or
occurrence" under an insurance contract when "the resulting damage was the
natural and expected result of the insured's actions." *Lamar Homes*, 242 S.W.3d

19

at 9. Thus, any claim that would satisfy the necessary elements to establish a *Parret* claim would necessarily not be covered under the New Hampshire policy, which is limited in its application to an accident, or under the National Union policy interpreted under Texas law. Accordingly, Cudd is not entitled to coverage under the two contracts construed under Texas law.

In resisting this outcome, Cudd argues that Texas law permits a surviving spouse's claim for exemplary damages where the death of the employee is due to the employer's "gross negligence." *See* Tex. Lab. Code § 408.001(b); *see also Esparza v. Jozwiak*, 391 F. Supp. 2d 504, 508 (E.D. Tex. 2005) (noting that "as a matter of law, a wrongful death cause of action for gross negligence does exist under the Texas Workers' Compensation Act" (quoting *Wyble v. E.I. DuPont de Nemours & Co.*, 17 F. Supp. 2d 641, 645 (E.D. Tex. 1998)); *Smith v. Atlantic Richfield Co.*, 927 S.W.2d 85, 88 (Tex. App. 1996) (permitting a cause of action for "the employer's gross negligence or intentional act"). Cudd argues that Ms. Phillips's suit was, in fact, one for gross negligence under Texas law, and that a claim for gross negligence is an accident within the meaning of the New Hampshire policy, as interpreted by Texas law. Cudd therefore argues that it was entitled to coverage for the claim.

But this argument is unavailing for two reasons. First, as previously discussed, the Phillips suit was an action defined by Oklahoma law. Even if, as Cudd alleges, the insurers had been uncertain at the outset whether the suit would

be governed by Texas or Oklahoma law, it is both undisputed, and impossible to dispute at this time, that the Phillips lawsuit was solely a creature of Oklahoma law. *See Phillips*, 2012 WL 1150831 at *2 (finding that Ms. Phillips's claims are governed by Oklahoma law). In other words, only Oklahoma law governed the case. And Oklahoma does not permit a claim for gross negligence as an exemption to the Workers' Compensation Act; thus, a gross-negligence claim necessarily could not have supported Ms. Phillips's action. *See Parret*, 127 P.3d at 575–76 (distinguishing between negligence, including gross negligence, and "willful acts that result in intended or unintended harm" and holding that only the latter, as defined by the substantial certainty test, permits recovery beyond that provided for in the Workers' Compensation Act) (emphasis omitted)); *see also Myers v. Lashley*, 44 P.3d 553, 563 (Okla. 2002) ("Gross negligence . . . . falls short of an intentional wrong's equivalent."); *Graham v. Keuchel*, 847 P.2d 342, 362 (Okla. 1993) ("While 'ordinary' and 'gross' negligence differ in *degree*, 'negligence' and 'willful and wanton misconduct' differ in *kind*."). In sum, it is irrelevant whether Texas law might have recognized a claim for gross negligence because Texas law was not applicable.

Second, the Phillips suit did not actually contain a claim for gross negligence. Cudd makes much of the fact that Ms. Phillips alleged that the death was due to the "willful, wanton, and gross negligence of Cudd," Aplt. App. at 720, but a full reading of the quoted sentence patently demonstrates that the claim

alleged was an intentional tort under *Parret*:

> [Mr.] Phillips' entrapment, suffering, pain, injuries, distress, and ultimate death were foreseeable and *known to be substantially certain to occur* from the standpoint of Defendant Cudd, and were avoidable and unnecessary but for the willful, wanton, and gross negligence of Cudd which, under the circumstances, was *tantamount to intentional conduct* causing Phillips' pain, suffering, injuries, distress and ultimate death,

*id.* (emphases added). The language unambiguously avers that Cudd acted with substantial certainty that injury would occur, which meant that it effectively committed an intentional tort. Put another way, no form of negligence—gross or otherwise—is implicated by this claim; rather, it avers an intentional tort under Oklahoma law. *See Parret*, 127 P.3d at 577 ("[A]n actor's conduct is intentional when the actor has the desire to cause the consequences of the act or when the actor knows the consequences are substantially certain to result from the act."). Cudd points to no other language in the complaint to support its theory that the Phillips suit was a claim for gross negligence, and we cannot identify any language to that effect. Neither could the district court in Ms. Phillips's action, which stated that "the precise issue involved in this case [is] whether a plaintiff is barred from bringing an *intentional* tort claim because she has received a final award in her workers' compensation case." *Phillips*, 2012 WL 1150831 at *2. Therefore, having concluded that the Phillips complaint alleged only an intentional tort, not gross negligence, it is clear to us that the insurers cannot be found in breach for declining to cover a claim that was not actually brought.

22

We therefore conclude, as a matter of Texas law, that Ms. Phillips's case did not allege a bodily injury by accident. Because coverage under the New Hampshire policy was limited to bodily injury by accident, we conclude that the Phillips action was not entitled to coverage under the New Hampshire policy. Furthermore, if the National Union policy were analyzed under Texas law, we would reach a like conclusion, given that the language in both policies is identical. In sum, as to the two policies, Texas law does not avail Cudd.

**c**

Nor could the National Union policy cover a *Parret* claim under Oklahoma law. Oklahoma law does not treat a *Parret* claim as a bodily injury by accident. We explain below.

The Oklahoma Supreme Court has held that the term "accident" has no special meaning in the law, and is defined "according to common speech and common usage of people generally." *U.S. Fid. and Guar. Co. v. Briscoe*, 239 P.2d 754, 756 (Okla. 1951). In that regard, the court held that an accident is "an event from an unknown cause, or an unexpected event from a known cause. An unusual and unexpected result, attending the performance of a usual or necessary act." *Id.* at 757 (citation omitted). In contrast, the court observed that if an actor "performs or does a voluntary act, the natural, usual and *to-be-expected result* of which is to bring injury or damage upon himself, then resulting damage, so occurring, is not an accident, in any sense of the word." *Id.* (emphasis added).

It appears that there is no authority from the Oklahoma Supreme Court that is directly on-point—*viz.*, that resolves the question of whether a *Parret* claim falls within the ambit of an insurance provision covering "bodily injury by accident." *But cf. Sizemore v. Continental Cas. Co.*, 142 P.3d 47, 53 (Okla. 2006) (listing among the exceptions to the Worker's Compensation Act "*non-accidental injury* which the employer knew was certain or substantially certain to result from the employer's conduct, *see Parret*" (emphasis added)).  Nevertheless, courts appear to have uniformly held that *Parret* claims do not constitute claims for bodily injury resulting from an accident.  For example, since oral argument in this case, a panel of this court in a persuasive nonprecedential decision rejected the notion that a *Parret* claim might be covered by an insurance policy that covered only "bodily injury by accident." *Fry v. Am. Home Assurance Co.*,  --- F. App'x ----, 2016 WL 737334, at *1 (10th Cir. Feb. 25, 2016).  The panel explained that the plaintiff's successful *Parret* action, by her own admission, necessarily rested on "a claim that her husband's death was the result of anything but an 'accident' and the product instead of 'knowing' misconduct." *Id.* (citing *Parret*, 127 P.3d at 579).  "Given this concession," the panel concluded that the relevant insurance policy, which only covered bodily injury by accident, was "inapplicable as a matter of law." *Id.*

The panel's view finds support in a decision from the Oklahoma Court of Civil Appeals.  In *CompSource Oklahoma v. L & L Construction, Inc.*, that court

held that an insurance contract that covered bodily injury by accident[4] did not

cover a third party's *Parret* claim against the insured employer.  207 P.3d at

421–22.  After an employee was killed in the scope of employment, the

employee's estate brought a *Parret* claim, alleging that the death "was a

substantially certain result of the failure of [the insured] to properly educate, train

and protect decedent in conjunction with its knowledge" of the risks.  *Id.* at 417.

The court concluded that the policy did not cover the claim because the claim

"attempted to allege an intentional tort" by using the substantial certainty

language.  *Id.* at 421–22.  The court found that *Parret* "set forth a definition and

parameters so that there would be no blurring of the line between intentional and

accidental injuries."  *Id.* at 419 n.3.  Concluding that the third-party claim was

squarely on the side of an intentional injury because it alleged that the employer

acted with substantial certainty, the court held that there was no coverage under

the contract.  *Id.* at 421–22.

　　　In applying Oklahoma law, district courts in our circuit have likewise held

that a *Parret* claim does not allege an accident.  For example, in *Lechner*, the

court found that an insurer had no duty to defend or indemnify its insured

employer under a policy covering "bodily injury by accident" where an employee

---

[4]　　　The language of the insurance contract at issue in *CompSource* is
identical to the language in the contract in this case in relevant respects: the
contract covered "bodily injury by accident" and excluded "bodily injury
intentionally caused or aggravated by you."  *CompSource*, 207 P.3d at 418.

alleged that the employer's actions were "intentional . . . and they were taken with the knowledge that there was a substantial certainty that serious injury or death would occur to [the employee]."[5]  910 F. Supp. 2d at 1293.  The court concluded that under Oklahoma law:

> [t]here is no reasonable way to construe the term "accident" to include injuries that are the subject of a *Parret* claim, because a key element . . . of a *Parret* claim is that the employer actually intended to cause an injury or knew with substantial certainty that an injury would occur.  These are not the type of "unexpected events" that fit within the definition of "accident" as the term was defined by the Oklahoma Supreme Court in *U.S. Fidelity & Guaranty Co.*

*Id.* at 1298–99.  Thus, the court concluded that allegations of substantial certainty of harm are properly construed as allegations of an intentional tort under the Workers' Compensation Act and *Parret*.  *Id.* at 1297; *see also Evanston Ins. Co. v. Dean*, No. 09–CV–0049–CVE–TLW, 2009 WL 2972336, at *8 (N.D. Okla. Sept. 11, 2009) (finding, under Oklahoma law, that an employee's allegation that the employer acted with substantial certainty that the employee would be injured amounted to an allegation of an intentional tort, not an allegation of an "accident" for purposes of the employer's insurance contract).

The reasoning of the foregoing cases is persuasive to us.  Furthermore, we note that in *Briscoe*, the Oklahoma Supreme Court found that an act is not an accident when its usual or to-be-expected results are injury.  239 P.2d at 757.  A

---

[5]    The court in *Lechner* applied both Oklahoma and Texas law to the claim in different sections of the opinion.

*Parret* claim alleges that an employer "acted with the knowledge that such injury was substantially certain to result from the employer's conduct." *Parret*, 127 P.3d at 579. That knowledge alone is enough to demonstrate that the injury was not an accident under the definition established by *Briscoe*.

Thus, we conclude that Ms. Phillips's suit—which averred a *Parret* claim asserting that Cudd acted with substantial certainty that injury would occur, Aplt. App. at 720—cannot fit the definition of "accident" under Oklahoma law. In order to successfully pursue the claim, Ms. Phillips was required to plead and prove that Cudd acted with substantial certainty that injury would result from its actions. As a matter of Oklahoma law, this requirement categorically rendered her lawsuit one to recover for non-accidental injuries. Because the National Union contract limited coverage (as relevant here) to "bodily injury by accident," Ms. Phillips's suit was outside the coverage of the insurance policy.

To be sure, Cudd argues that the Phillips suit falls within the policy because the suit did not adequately allege that Cudd's behavior was intentional. Cudd argues that it never had a subjective intent to harm Mr. Phillips. However, this argument is misdirected: under *Parret*, an employer's conduct may constitute an intentional tort (i.e., a non-accidental injury), even if the employer did not act with a subjective intent to harm.

In sum, for the foregoing reasons under Oklahoma law, we conclude that the National Union policy did not cover Ms. Phillips's action; consequently, the

district court properly granted summary judgment in favor of National Union on this basis.

## B

Having determined that the district court did not err in finding that Cudd was not entitled to coverage under its insurance contracts, we now evaluate Cudd's claim that the insurers breached the duty of good faith and fair dealing under Oklahoma law. We conclude that the insurers did not breach this duty and accordingly affirm the district court on this ground.

Under Oklahoma law, an insurer has a duty to "deal fairly and act in good faith with its insured" and "the violation of this duty gives rise to an action in tort." *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977). When insuring against third-party claims, "an insurer's duty of good faith and fair dealing includes the duty to act in a diligent manner in relation to investigation, negotiation, defense and settlement of claims being made against the insured." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1096 (Okla. 2005).

The district court granted summary judgment to the defendants on this claim, noting that Cudd could not recover on a bad-faith claim where it was not entitled to coverage under its insurance policies with the defendants. *See* Aplt. App. at 1267 (citing *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009) for the proposition that a necessary element of a bad-faith claim against an insurer for denial of coverage is that the claimant "was entitled to coverage under the

insurance policy at issue"). Because it had concluded that neither policy provided coverage for Ms. Phillips's *Parret* claim, the court found that the bad-faith claim must also fail.

Cudd has expressly limited its bad-faith claim in its opening appellate brief to a contention that the insurers declined to pay the cost of the settlement in bad faith and did not properly investigate or handle the claim. Aplt. Opening Br. at 29 ("[N]or did Cudd ever allege that its bad faith cause of action was for delay in payment. Rather, Cudd's bad faith cause of action arose out of the Insurers' bad faith investigation, handling of and refusal to settle the *Phillips* claim.").[6] Cudd

---

[6]    Cudd's opening appellate brief offers only a minimal description of the insurers' alleged acts of bad faith. Although the brief goes to great lengths to show the purported legal errors committed by the district court, a close reading of the opening appellate brief reveals only two conclusory statements regarding how the insurers actually breached their duty. First, Cudd alleges that "the Insurers still bore the obligation to investigate the claim properly and to deal fairly and in good faith with its insured. The Insurers did not do so . . . ." Aplt. Opening Br. at 31. Second, Cudd states that

> at a minimum under the facts of this case, Cudd is entitled to a jury trial on the bad faith issue, and frankly, upon reviewing the statements of uncontroverted facts in Cudd's summary judgment moving papers, this Court will agree that the evidence of the Insurer's bad faith claim handling is abundantly clear.

*Id.* at 34 (emphasis omitted) (footnote omitted). Cudd's only supportive citation is a single footnote that identifies its own summary-judgment briefs to the district court. We could fairly question whether such skeletal briefing adequately preserves an issue. *See Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1246 n.13 (10th Cir. 2003) ("Without a specific reference, 'we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury.'" (quoting *Gross v. Burggraf*

(continued...)

argues that the district court erroneously applied the standard applicable to first-party insurance claims to its third-party claim.  Cudd further argues that it may bring a claim for breach of the duty of good faith and fair dealing even without demonstrating that it had a viable claim for breach of the underlying insurance contract.  We conclude, however, that the district court did not err in rejecting Cudd's bad-faith claim.

"The essence of a bad faith claim centers on the unreasonableness of the insurer's conduct."  *Vining v. Enter. Fin. Grp., Inc.*, 148 F.3d 1206, 1213 (10th Cir. 1998) (applying Oklahoma law).  Because the critical inquiry is whether the insurer behaved reasonably, in construing Oklahoma law, we have previously

---

[6](...continued)
*Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995))); *United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) ("[I]t is the appellant's responsibility to tie the salient facts, supported by specific record citation, to [his] legal contentions." (second alteration in original) (quoting *Schaede v. Boeing Co.*, 72 F.3d 138, at *1 (10th Cir. 1995) (unpublished table decision))); *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) (stating that when attempting to show a genuine issue of material fact, "sufficient evidence (pertinent to the material issue) must be identified [by the nonmovant] by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein"); *see also Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.").  While Cudd's reply brief is more complete on this issue, waiting until a reply brief to detail an argument is improper for a number of reasons—not least of which is the fact that it affords the opposing party an insufficient opportunity to address the arguments.  *See United States v. Gordon*, 710 F.3d 1124, 1150 (10th Cir. 2013); *United States v. Jenkins*, 904 F.2d 549, 554 n.3 (10th Cir. 1990).  Nevertheless, we need not explore the preservation question further because we are satisfied that, even assuming Cudd has preserved its bad-faith argument, it cannot prevail.

concluded that an insurer does not breach its duty when it denies a claim and a court subsequently concludes that there was, in fact, no coverage for the claim under the insurance contract. *See VBF, Inc. v. Chubb Grp. of Ins. Cos.*, 263 F.3d 1226, 1234 (10th Cir. 2001) (applying Oklahoma law) ("As the policies did not cover [the insured's] claim, Defendants' denial of the claims was clearly legitimate. Thus, VBF has no bad faith claim against Defendants."); *accord Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340–41 (Tex. 1995) (applying Texas law) ("As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered.").

Contrary to Cudd's suggestion, this legal principle applies with full force in the context of a third-party claim. In this regard, in *Badillo*, where a third-party claim was addressed, the Oklahoma Supreme Court explicitly held that, as an element of a bad-faith claim, a plaintiff-insured must demonstrate that "he was covered under the . . . insurance policy issued by [the insurer] and that insurers were required to take reasonable actions in handling the [third-party] claim." 121 P.3d at 1093.[7]

---

[7]     As relevant here, in *Badillo*, the Oklahoma Supreme Court spelled out, in the following manner, the requisite components of a bad-faith claim:

> The essential elements insured was required to show to make out a prima facie case [in a bad-faith action] were as follows: 1) [the insured] was covered under the . . . insurance policy issued by [the insurers] and that insurers were required to take reasonable actions in handling the [third-party] claim; 2) the actions of
>
> (continued...)

31

Cudd's reliance on our decision in *Vining* to support a contrary conclusion is misguided. Cudd underscores the following passage from *Vining*: "No court has held that an insured must actually prevail on a separate underlying breach of contract claim in order to maintain a successful bad faith claim, and we cannot predict that Oklahoma would impose such a condition precedent to a bad faith claim." 148 F.3d at 1214. Read in context, however, this language lends Cudd no succor; if anything, it supports our conclusion. In that passage, we were rejecting the insurer's position that because the insured had not secured a prior judgment in its favor on a separate and distinct breach-of-contract claim, it could

---

[7](...continued)

> insurers were unreasonable under the circumstances; 3) insurers failed to deal fairly and act in good faith toward [the insured] in their handling of the [third-party] claim; and 4) the breach or violation of the duty of good faith and fair dealing was the direct cause of any damages sustained by insured.

121 P.3d at 1093. The first element clearly speaks to whether the insured can make a showing that he had a viable entitlement to coverage under the terms of the insurance policy at issue. Notably, in all material respects, the Oklahoma Supreme Court has repeated these same elements in *Brown v. Patel*, 157 P.3d 117, 129 (Okla. 2007). Strangely, Cudd leans on *Brown* for support in its reply brief. In doing so, Cudd suggests that the first element of the claim only requires that the plaintiff be a named insured under the policy at issue—not that the policy provide coverage to the plaintiff. *See* Aplt. Reply Br. at 7 (in citing *Brown*, noting that "there is no doubt Cudd is *an insured* under both the New Hampshire and National Union policies." (emphasis added)). The plain language of *Brown*, however, belies this contention and demonstrates that *Brown* is unavailing. *See Brown*, 157 P.3d at 129 (noting that the first element of a bad-faith claim requires "[a]n insured . . . to show that (1) he or she was *covered* under . . . [the] policy issued by the insurer and that the insurer was required to take reasonable actions in handling the . . . claim" (emphasis added)).

32

not maintain a viable bad-faith claim stemming from the contract.  *See id.* (noting that the insurer "makes much of [insured's] decision to abandon the breach of contract action").

This is a very different issue from whether, as an element of a bad-faith claim, plaintiffs must establish that they are entitled to coverage under the insurance contract at issue.  If there were any doubt about this—and there should not be—*Vining* itself dispels it.  Specifically, *Vining* stressed that, while the insurer's asserted requisite condition (i.e., an actual favorable judgment on a related breach-of-contract claim) was not in fact required for a viable bad-faith claim under Oklahoma law, the condition that *was* required for such a claim—i.e., a showing of entitlement to coverage—was satisfied, as the record demonstrated. *See id.* ("[T]he jury instructions specifically mandated a finding that [insurer] was required to pay [insured] under the policy before the jury could conclude that [insurer] acted in bad faith.  Because the jury found [insurer] liable, we must assume that the jury found that [insurer] had a duty to pay [insured] under the policy." (footnote omitted)).  Therefore, *Vining* does not advance Cudd's cause, and its reliance on the case is misguided.

In sum, we conclude that the district court correctly rejected Cudd's bad-faith claim because it was not entitled to coverage under either the New Hampshire policy or the National Union policy.

## C

The last remaining item before us is Cudd's opposed motion to supplement the appendix.  *See* 10th Cir. R. 30.2(B) (requiring an appellant to seek permission before filing a supplemental appendix).  Panels of our court have permitted parties to supplement the appendix on appeal when the appendix, without the supplement, would be deficient to resolve the case at bar.  *See, e.g.*, *Sumler v. Boeing Co.*, 143 F. App'x 925, 928 (10th Cir. 2005) (granting an opposed motion to file a supplemental appendix when it included evidence that the court requested at oral argument); *see also Sanchez v. Mora-San Miguel Electric Co-op. Inc.*, 173 F.3d 864, at *2, *8 (10th Cir. 1999) (unpublished table decision) (granting a motion to file a supplemental appendix to supply missing jury instructions).  In contrast, panels of our court have denied motions to file a supplemental appendix when the proposed materials have "no bearing on our determination."  *See, e.g.*, *Pendleton v. U.S. Penitentiary of Leavenworth*, 325 F. App'x 709, 710 (10th Cir. 2009).

The documents submitted by Cudd are not mentioned in either party's briefing and were not discussed at oral argument.  They were not referred to at all by the parties, and any argument subsequently formulated on the basis of these documents would be waived.  Thus, we cannot conceive of a way that these documents could have any bearing on our determination.  We deny Cudd's motion to supplement the appendix on appeal.

### III

The district court correctly granted summary judgment to the insurers on the questions of breach of contract and breach of the duty of good faith and fair dealing, and rightly denied summary judgment to Cudd on the same issues.  For the foregoing reasons, we **AFFIRM** the district court's judgment.  We **DENY** Cudd's motion to supplement the appendix.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge